U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

*[signature]*

United States Bankruptcy Judge

Signed December 04, 2012

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **VITRO ASSET CORP., et al.** | § | **Case No. 11-32600-HDH-11** |
| | § | |
| Debtors. | § | **Jointly Administered** |
| | § | |

### Memorandum Opinion

In *Knighthead Master Fund, L.P. v. Vitro Packaging, LLC* (*In re Vitro Asset Corp.*), No. 3:11-CV-2603-D (N.D. Tex. Aug. 28, 2012), the United States District Court for the Northern District of Texas, Fitzwater, C.J., vacated two orders of the Bankruptcy Court, Nelms, J., and remanded to this Court for further proceedings.[1]  Judge Nelms entered the Paying Debts Order[2]

---

[1] On April 15, 2011, the jointly administered involuntary cases under 10-47470-rfn-11 were reassigned and transferred to this Court. *In re Vitro Asset Corp., et al.*, No. 11-32600-hdh-11 (Bankr. N.D. Tex. April 15, 2011) (order reassigning and transferring cases to the Dallas division).
[2] *In re Vitro Asset Corp., et al.*, No. 11-32600-hdh-11 (Bankr. N.D. Tex. April 11, 2011) (order denying petitions for relief against Vitro Packaging, LLC, Vitro Chemicals, Fibers & Mining, LLC, and VVP Auto Glass, Inc.).

and the Demand Order[3] on April 11, 2011 and April 21, 2011, respectively, after considering and denying involuntary Chapter 11 petitions filed by Knighthead Master Fund, L.P., Brookville Horizons Fund, L.P., Davidson Kempner Distressed Opportunities Fund L.P., and Lord Abbett Bond-Debenture Fund, Inc. (collectively, the "Petitioning Creditors") against twelve of the U.S. subsidiaries of Vitro, S.A.B. de C.V. ("Vitro SAB"). Initially, involuntary petitions were filed against additional subsidiaries of Vitro SAB, but these subsidiaries successfully moved for entry of orders for relief on April 6, 2011.[4] Also, one of the twelve subsidiaries, VVP Holdings, Inc., filed a voluntary Chapter 11 petition on June 2, 2011. They have proceeded to liquidate assets in Chapter 11, have converted their cases to Chapter 7, and a Chapter 7 Trustee, Scott Seidel, is now administering the remaining assets.

The remaining involuntary petitions (the "Involuntary Petitions") are against Vitro Asset Corp., Vitro Chemicals, Fibers & Mining, LLC, Troper Services, Inc., Amsilco Holdings, Inc., B.B.O. Holdings, Inc., Binswanger Glass Company, Crisa Corporation, VVP Auto Glass, Inc., V-MX Holdings, LLC, and Vitro Packaging, LLC (collectively, the "Alleged Debtors").[5] Although the Involuntary Petitions were dismissed by the bankruptcy court in April 2011, the dismissal orders were vacated by the District Court, and must now be considered by this Court.

This memorandum opinion constitutes the Court's findings of facts and conclusions of law pursuant to Federal Rules of Bankruptcy Procedure 9014 and 7052. This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. The proceeding is core, pursuant to 28 U.S.C. § 157(b)(2).

---

[3] *In re Vitro Asset Corp., et al.*, No. 11-32600-hdh-11, 2011 WL 1561025 (Bankr. N.D. Tex. April 21, 2011) (order denying petitions for relief against Vitro Asset Corp., V-MX Holdings, LLC, Amsilco Holdings, Inc., B.B.O. Holdings, Inc., Binswanger Glass Company, Troper Services, Inc., Crisa Corporation, and VVP Holdings, LLC).
[4] *In re Vitro Asset Corp., et al.*, No. 11-32600-hdh-11 (Bankr. N.D. Tex. April 6, 2011) (order for relief against Vitro America, LLC, Super Sky International, Inc., Super Sky Products, Inc., and VVP Finance Corporation).
[5] Vitro Packaging, LLC, Vitro Chemicals, Fibers & Mining, LLC, and VVP Auto Glass, Inc. (the "Operating Alleged Debtors") are operating companies, and the remaining Alleged Debtors are non-operating companies (the "Non-Operating Alleged Debtors").

I.    **Background Facts**

The events leading up to Judge Fitzwater's decision to remand are generally described in his opinion. *See Knighthead Master Fund, L.P. v. Vitro Packaging, LLC* (*In re Vitro Asset Corp.*), No. 3:11-CV-2603-D (N.D. Tex. Aug. 28, 2012).[6]

After receiving the District Court's remand order, this Court held a status conference on September 7, 2012, where this Court determined that the only issue left to be decided was whether the debts were subject to a bona fide dispute as to amount. One week later, the Alleged Debtors filed a *Motion to Abate All Proceedings in Involuntary Cases Pending Fifth Circuit's Ruling on Enforcement Appeal, or, in the Alternative, to Adjourn the Hearing and Order a Briefing Schedule* (the "Motion to Abate"). On September 26, 2012, this Court entered an order denying the Motion to Abate, since the remaining issue had largely already been briefed during the involuntary hearings before Judge Nelms.

Judge Fitzwater thoroughly discussed the Paying Debts Order and the Demand Order before beginning his legal analysis. However, certain events not discussed in his remand opinion may be relevant to the Court's decision, and will be further discussed here.

*The New York State Court Judgments*

The Alleged Debtors' central argument is that the "limitation on amount of guaranty" clause in the indentures limits the amount of the Petitioning Creditors' claims to the amount of liability, if any, each Alleged Debtor could have incurred at the time of its entering into the guarantee without having been rendered insolvent. The Alleged Debtors assert that the determination of these amounts involves complex disputed factual issues regarding the financial status of each Alleged Debtor rendering the Petitioning Creditors' claims subject to a bona fide

---

[6] In his opinion, Judge Fitzwater discussed the nature of the debt that led to the consolidated bankruptcy appeals, as well as the procedural history of the Involuntary Petitions.

dispute. However, this argument has subsequently been rejected by the New York state court courts.

After the bankruptcy court dismissed the Involuntary Petitions and during the pendency of the consolidated appeals that followed, judgments were rendered against the Alleged Debtors in New York state courts. These judgments concern obligations arising from the same guaranties[7] made by the Alleged Debtors in the instant case, and all of the Alleged Debtors were defendants in one or more of the New York state actions ("NY Actions"). More importantly, no less than one unstayed state court judgment has been entered against each of the Alleged Debtors. In the NY Actions, it was determined that a particular provision within the Indentures constituted a savings clause rather than a limitation on liability.

On December 16, 2011, the Supreme Court of the State of New York, Fried, J., granted partial summary judgment in favor of ACP Master, Ltd., Aurelius Capital Master, Ltd., Aurelius Convergence Master, Ltd., (collectively, "ACP"), as well as Elliott International L.P., and The Liverpool Limited Partnership (collectively, "Elliott"). Judge Fried's decision addresses a motion filed in the ACP action, as well as a motion filed in the Elliott action. *ACP Master, Ltd. v. Vitro S.A.B. de C.V.*, No. 652146/10 (N.Y. Sup. Ct. Dec. 16, 2011). *Inter alia*, the trial court specifically ordered that "partial summary judgment is granted in favor of the plaintiffs and against the defendants . . . with respect to such defendants' liabilities under the Indentures, the Notes and the Guaranties."[8] According to Judge Fried, the defendants asserted that the amounts of the guarantors' payment obligations were limited to amounts that would not have rendered the guarantors insolvent at the time such guaranties were made.

---

[7] The guaranties, by their very terms, are governed by New York law.
[8] The plaintiffs sought partial summary judgment against all defendants except Vitro SAB and Vitro Packaging de Mexico S.A. de C.V. ("VPM").

On March 21, 2012, the same court entered another summary judgment in favor of Wilmington Trust, National Association ("Wilmington"). *Wilmington Trust, National Ass'n v. Vitro Automotriz, S.A. de C.V. et al.,* No. 652303/11 (N.Y. Sup. Ct. March 21, 2011). In his opinion, Judge Fried discusses the defendants' argument "that the so-called 'guaranty limitation' provisions of the Indentures would require a determination of the maximum amount of Wilmington's claim against each [d]efendant." Rejecting the defendants' position, he states that the defendants' "reliance on the 'guaranty limitation' provisions is misplaced and their argument is unpersuasive."

On July 13, 2012, Judge Fried decided another related matter brought by US Bank National Association ("US Bank") and the plaintiffs from the Elliott-Aurelius Action.[9] In his ruling, Judge Fried unmistakably rejects the defendants' argument that "no court has ever ruled on the merit of their 'limitation on amount of guarantee' defense," before noting that he rejected that defense in his prior ruling on December 16, 2011. *See US Bank, National Ass'n. v. Vitro Automotriz, S.A. de C.V. et al.,* No. 650506/2012 (N.Y. Sup. Ct. July 13, 2012).

The December 16, 2011 ruling was appealed to the Appellate Division, First Department in New York. One of the questions presented to the appellate court was "[d]id the lower court err as a matter of law in granting summary judgment in favor of Plaintiff-Respondents' claims, where the court found that certain clauses of the notes at issue did not limit the [d]efendants' liability because no fraudulent transfer was alleged?" In affirming Judge Fried's decision, the appellate court described the disputed language as a "fraudulent conveyance savings clause provision in a series of indentures guaranteed by them," rather than a limitation on liability. *Elliott Int'l L.P. v. Vitro, S.A.B. de C.V.*, 95 A.D.3d 565, 565 (N.Y.S.2d 2012). Furthermore, the

---

[9] The decision addressed two different motions, which were filed by US Bank, solely in its capacity as an indenture trustee, and Elliott International L.P., The Liverpool Limited Partnership and Aurelius Opportunities Fund IV, Ltd.

appellate court explained that "the limitation provision at issue could be triggered only by an allegation of a fraudulent conveyance, and no such allegation was made here."

### *Post-Petition Activities of the Alleged Debtors*

October 5, 2012, this Court presided over a hearing where the parties were to address the issue of whether the debts were subject to a bona fide dispute as to amount. It was only then that this Court learned certain facts that, in good candor, should have been previously disclosed by the Alleged Debtors.

Specifically, the Court learned during oral arguments that one of the Alleged Debtors, VVP Auto Glass, Inc., sold its stock to an entity not named as a party in these involuntary petitions.[10] Apparently, the Petitioning Creditors first became aware of the stock sale by way of disclosures made in the NY Actions.[11] Surprisingly, the Alleged Debtors did not provide this information to the District Court for the Northern District of Texas despite their presence there during the consolidated appeals of the bankruptcy court's orders dismissing the Involuntary Petitions. Additionally, five of the Alleged Debtors[12] reincorporated in the Bahamas October 11, 2011, after the Involuntary Petitions were filed and dismissed. This fact was not revealed to any court until the hearing on October 5, 2012, nearly a year after the Alleged Debtors reincorporated.[13]

---

[10] Vitro Asset Corp. agreed to sell all of the stock of VVP Auto Glass, Inc., an Alleged Debtor, about a month after this Court denied the Petitioning Creditors' *Consolidated Motion to Alter or Amend the Court's April 11, 2011 Order Denying the Petitions for Involuntary Bankruptcy Against Three Alleged Debtors* and their *Consolidated Motion to Alter or Amend the Court's April 21, 2011 Order Denying the Petitions for Involuntary Bankruptcy Against Eight Alleged Debtors*. The stock was sold to Kamp Tower Logistics, LLC., pursuant to a Stock Purchase Agreement entered into on August 10, 2011.

[11] According to Mr. Greendyke, counsel for the Alleged Debtors, he was unaware that the stock sale occurred until sometime after the status conference on September 7, 2012 and before the hearing on October 5, 2012.

[12] During September 2011, Vitro Asset Corp., V-MX Holdings, LLC., Amsilco Holdings, Inc., B.B.O. Holdings, Inc. and Crisa Corporation reincorporated in the Bahamas.

[13] The Petitioning Creditors assert that this information was first disclosed to them via exhibits submitted shortly before the hearing, and given the litigation history in these proceedings, such claim seems plausible because the Petitioning Creditors probably would have brought this matter to the attention of the Court.

Similarly, the Alleged Debtors failed to disclose this critical information to the Supreme Court of the State of New York or to the Appellate Division, First Department. The nondisclosure of their actions is particularly disturbing because of previous questionable acts taken by one or more of the Alleged Debtors. For example, in June 2009, one of the Alleged Debtors made a single dividend payment that ultimately ended up in the hands of VPM. The dividend amount was $46 million. In July 2009, one of the Alleged Debtors caused more than $100 million worth of assets to be transferred out of the United States and into Mexico. Despite the alleged tax purposes for such transfers, there was not a shred of documentary evidence to demonstrate that the moving of substantial assets outside the United States was for a bona fide tax purpose.

## I. Issue

Pursuant to the District Court's order, this Court must determine whether an order for relief should be entered in favor of the Petitioning Creditors. The only finding necessary to such a determination concerns whether their debts were the subject of a bona fide dispute as to amount.

## II. Analysis

Involuntary bankruptcy proceedings are governed by 11 U.S.C. § 303, which provides that if a debtor has twelve or more creditors, the petition must be filed by:

> [T]hree or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or *the subject of a bona fide dispute as to liability or amount*, or an indenture trustee representing such a holder, if such noncontingent, undisputed claims aggregate at least $14,425 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims.

11 U.S.C. § 303(b)(1) (emphasis added). Additionally, if an involuntary petition is contested, then the court must order relief against a debtor if "the debtor is generally not paying his debts as

they come due unless such debts are the subject of a *bona fide dispute as to liability or amount.*" 11 U.S.C. § 303(h) (emphasis added). The Alleged Debtors seek a dismissal of the Involuntary Petitions filed against them by arguing that the Petitioning Creditors' claims are subject to a *bona fide* dispute and cannot support the Involuntary Petitions. Therefore, the Petitioning Creditors must satisfy the requirements of 11 U.S.C. § 303 by a preponderance of the evidence. *In re Smith*, 415 B.R. 222, 229 (Bankr. N.D. Tex. 2009) (citing *In re Moss*, 249 B.R. 411, 418 (Bankr. N.D. Tex. 2000)).

### *Bona Fide Dispute*

The Bankruptcy Code does not define "bona fide dispute," but the Fifth Circuit applies an objective standard to evaluate whether a claim is subject to a bona fide dispute as to liability or amount. *In re Sims,* 994 F.2d 210 (5th Cir. 1993). "Under that objective standard, the bankruptcy court must 'determine whether there is an objective basis for either a factual or a legal dispute as to the validity of the debt.'" *In re Sims*, 994 F.2d at 221 (quoting *In re Rimell*, 946 F.2d 1363, 1365 (8th Cir. 1991)). The Fifth Circuit then adopted the Eighth Circuit's methodology in *In re Rimell*, 946 F.2d 1363 (8th Cir. 1991):

> [T]he petitioning creditor must establish a prima facie case that no bona fide dispute exists. Once this is done, the burden shifts to the debtor to present evidence demonstrating that a bona fide dispute does exist. Because the standard is objective, neither the debtor's subjective intent nor his subjective belief is sufficient to meet this burden. The court's objective is to ascertain whether a dispute that is bona fide exists; the court is not to actually resolve the dispute. This does not mean that the bankruptcy court is totally prohibited from addressing the legal merits of the alleged dispute; indeed, the bankruptcy court may be required to conduct a limited analysis of the legal issues in order to ascertain whether an objective legal basis for the dispute exists. Finally, because the determination as to whether a dispute is bona fide will often depend . . . upon an assessment of witnesses' credibilities and other factual considerations, the bankruptcy court's determination in this regard is a factual finding that may be overturned on appeal only if it is clearly erroneous. *Rimell*, 946 F.2d at 1365 (citations omitted).

*In re Sims*, 994 F.2d at 221.

The Alleged Debtors assert that the "limitation on amount of guaranty" clause in the

indentures subjects their liability to the Petitioning Creditors to a bona fide dispute as to the amount of their debts. As this Court noted in *In re Smith*, courts have utilized various tests to determine if there is an objective basis for determining whether a bona fide dispute exists. *In re Smith*, 437 B.R. 817, 823 (Bankr. N.D. Tex. 2010). In fact,

> [s]ome courts in this Circuit have adopted a "summary judgment" type standard, reasoning that "if the defense of the alleged debtor to the claim of the petitioning creditor raises material issues of fact or law so that a summary judgment could not be rendered as a matter of law in favor of the creditor on a trial of the claim, the claim is subject to a bona fide dispute." *See, e.g., In re Cates,* 62 B.R. 179, 181 (Bankr. S.D. Tex. 1986) (quoting *In re Stroop,* 51 B.R. 210, 212 (D. Colo. 1985)). Courts in other circuits have held that the "summary judgment" type standard creates too high of a hurdle for a would-be petitioning creditor. *See, e.g., In re B.D. Int'l Discount Corp.,* 701 F.2d 1071, 1077 (2nd Cir. 1983) ("In order to qualify a claim as a basis of seeking involuntary bankruptcy, a claimant need not make out a case warranting summary judgment . . . . It is sufficient to establish . . . that there are good grounds for the claim and that no defenses have been asserted in substantiable form."); *see also Mag Bus. Servs. Bentley Racing Prods. v. Whiteside (In re Whiteside),* 238 B.R. 468, 469 (Bankr. W.D. Mo. 1999) ("A bona fide dispute exists if there are 'substantial' factual and legal questions raised by the debtor bearing upon the debtor's liability ..."); *B.D.W. Assocs. v. Busy Beaver Bldg. Ctrs., Inc.,* 865 F.2d 65, 66–67 (3rd Cir. 1989), *Rimell v. Mark Twain Bank (In re Rimell),* 946 F.2d 1363, 1365 (8th Cir. 1991).

*Id.* at 823–24.

Congress amended section 303(b)(1) of the Code to add "and amount" after the phrase "not contingent as to liability or the subject of a bona fide dispute as to liability" with the Bankruptcy Abuse and Consumer Protection Act of 2005 ("BAPCPA"). In response, a majority of courts have held that in order to proceed in an involuntary case a claim must not be subject to a bona fide dispute as to *any* material amount. *In re Taub*, 439 B.R. 261, 275 (Bankr. E.D. N.Y. 2010); *In re Rosenburg*, 414 B.R. 826, 845–46 (Bankr. S.D. Fla. 2009); *Mountain Diaries, Inc.*, 372 B.R. 623, 634 (Bankr. S.D. N.Y. 2007); *In re Euro-American Lodging Corp.*, 357 B.R. 700,

712 n.8 (Bankr. S.D. N.Y. 2007); *In re Regional Anesthesia Assocs.*, 360 B.R. 466, 470 (Bankr. W.D. Pa. 2007); *In re Orlinsky*, No. 06-15417-BKC-RAM, 2007 WL 1240207 at *1 (Bankr. S.D. Fla. Apr. 24, 2007); *In re Dilley*, 331 B.R. 1, 6 (Bankr. Me. 2005). Conversely, a minority of courts have held that so long as the noncontingent, undisputed portion of the claim exceeds the threshold amount,[14] then the creditor remains eligible to file an involuntary case. *See In re DemirCo Holdings, Inc.*, No. 06-70122, 2006 WL 1663237, at *3 (Bankr. C.D. Ill. June 9, 2006) (rejecting the presumption that Congress intended "that the claims of involuntary petitioners must now be fully liquidated by agreement or judgment so that no dispute exists as to any portion of such claims"); *In re Tucker*, No. 5:09-bk-914, 2010 WL 4823917, at *6 (Bankr. N.D. W. Va. Nov. 22, 2010) (accepting the position that "[a] petitioning creditor is not disqualified even if a bona fide dispute exists regarding a *portion* of its claim." (citing *In re DemirCo Holdings, Inc.* No. 06-70122, 2006 WL 1663237 (Bankr. C.D. Ill. June 9, 2006))). This Court has not yet sided with either line of authority, and will not need to do so to reach a decision in this case.

This Court need not determine whether the amendment to section 303(b)(1) renders the Petitioning Creditors ineligible to file Involuntary Petitions against the Alleged Debtors because deference must be given to the findings of another forum. As discussed above, in actions involving the alleged debts in the instant case, New York state courts have held, as a matter of summary judgment, that the disputed language within the Indentures constituted a savings clause rather than a limitation on liability.

The Supreme Court of the State of New York granted summary judgment motions against the Alleged Debtors in various actions brought by noteholders and indenture trustees. In these

---

[14] The threshold amount was $14,425.00 at the time the Involuntary Petitions were filed. 11 U.S.C. § 303(b)(1).

actions, the Alleged Debtors had a full and fair opportunity to litigate the issue but failed to raise any material issue of law or fact that would preclude summary judgment. Additionally, Judge Fried's ruling from December 16, 2011, which determined that the provision in the indentures constituted a savings clause, was affirmed on appeal. Thus, through the determinations of the NY Actions, there is a liquidated amount owed and no bona fide dispute as to amount that removes this claim from involuntary proceedings.

This court acknowledges, as it did, in *In re Smith* that the eligibility of a petitioning creditor is to be determined at the time the case is filed. Nevertheless, this Court is not prohibited from considering judgments rendered subsequent to the petition date, particularly when the judgments include determinations that resolve issues in its decision. In *In re Smith*, this Court determined that no bona fide dispute existed when, as of the petition date, the creditor held what appeared to be an unstayed final judgment against the debtor. *In re Smith*, 437 B.R. 817, 823 (Bankr. N.D. Tex. 2010) ("there is no requirement that a judgment be final for a bankruptcy court to determine that the creditor's claim is not subject to a bona fide dispute."). *Id*. at 824. In fact, "all that is required is the establishment of a right to payment." *Id*.

Additionally, this Court recognized that attention and deference must be given to the findings of other forums when reviewing an alleged debtor's defenses to the entry of an order for relief. *Id.* (citing *In re Elsa Designs,* 155 B.R. 859, 869 (Bankr. S.D. N.Y. 1993); *In re Ross,* 63 B.R. 951, 967 (Bankr. S.D. N.Y. 1986)). The fact that the judgments from the NY Actions were entered post-petition is not enough, by itself, to preclude this Court from considering the findings of the New York courts in order to determine whether a bona fide dispute exists under section 303(b). Because attention and deference must be given to the determinations of other forums, this Court is bound by the findings of the New York state courts. And, if not bound in a legal

sense, this Court certainly would defer to the findings of facts and conclusions of law of the NY state courts in this instance.

Finally, in the present case, this Court finds that each of the Alleged Debtors expressly guaranteed the full payment of all amounts under the Notes and the Indentures, on a joint and several basis, upon Vitro SAB's default. That default occurred prior to the filing of this involuntary proceeding, and under the clear language of the Indentures, the amount of the Petitioning Creditors' claims against each Alleged Debtor is, therefore, the full amount outstanding on their Notes as of the Petition Date.

The language of the guarantees is clear, "each guarantor hereby irrevocably and unconditionally guarantees jointly and severally, on an unsecured basis, the full and punctual payment of the principal, premium, if any, and interest on and all other amounts payable under each note, and the full and punctual payment of all other amounts payable by the company under the indenture." 2012 Indenture at §10.01; 2013 Indenture at § 11.01; 2017 Indenture at § 10.01. The language of the savings clauses merely protects the noteholders from attempts to avoid the guaranties in the event those guaranties are challenged as constructively fraudulent transfers, and the Alleged Debtors did not show that the guarantees constituted fraudulent transfers that would invoke the savings clause in this case.

Thus, the Petitioning Creditors established a prima facie case that no bona fide dispute exists as to liability or amount of their claims and the Alleged Debtors did not meet their burden to show the existence of a bona fide dispute in this case. No bona fide dispute exists with respect to whether the clauses are limitations on liability or savings clauses.

### *The Special Circumstances Exception*

At the final hearing on October 5, 2012, the Alleged Debtors revealed to the Court for the first time that the stock of one of those debtors had been sold, and that several of the Alleged Debtors had reincorporated in the Bahamas. Specifically, on August 10, 2011, just sixteen days after the Court entered an order confirming the dismissal of the involuntary petitions, Vitro Asset Corp. entered into a Stock Purchase Agreement whereby all the stock of Alleged Debtor VVP was sold. Thereafter, in September 2011, five of the Alleged Debtors reincorporated in the Bahamas.

The reincorporations took place prior to the briefing on the Involuntary Appeal, but the Alleged Debtors did not disclose them at any point to the District Court in that appeal. They did not file a motion to substitute parties. They did not disclose the reincorporations at oral argument. They did not even disclose it to their own counsel.[15] In addition, counsel filed their briefs as counsel to the Alleged Debtors, using the same names stated in the involuntary petitions. All while seeking stays and restraining orders from this Court and the Court of Appeals, these acts were taken, apparently, to prevent creditors with guarantee claims from taking steps to collect on their judgments.

This district has established a "special circumstances" exception to the technical requirements of section 303(b), "when there is fraud, trick, artifice, or scam by an alleged debtor." *See In re Moss*, 249 B.R. 411, 424 (Bankr. N.D. Tex. 2000); *In re Norris Bros. Lumber Co.*, 133 B.R. 599 (Bankr. N.D. Tex. 1991). More recently, in *In re Smith*, this Court found that the exception should apply to preclude the existence of a bona fide dispute when the alleged debtor had participated in fraudulent transfers and pre-petition payments. *See In re Smith*, 437

---

[15] At the hearing before this Court on October 5, 2012, Mr. Greendyke informed the Court that he was unaware of the reincorporation or stock sale until just prior to that hearing.

B.R. 817, 825 (Bankr. N.D. Tex. 2010) (Pre-petition transfers, as well as subsequent events, made "it clear that the 'special circumstances' exception should apply… ." ).

To the extent that the "special circumstances" exception still exists, it should apply in the instant case against the Alleged Debtors because of their actions. Specifically, in 2009, substantial assets were transferred from the United States to Mexico. After the fact, despite a total lack of documentary evidence, the transfer was said to have been made for tax purposes.[16] Additionally, as described above, before the District Court could reach a decision in the consolidated appeals of the bankruptcy court's dismissal orders, five of the Alleged Debtors had reincorporated in the Bahamas. Although they had multiple opportunities to disclose the fact of reincorporation to several different courts, they did not. In addition, one of the Alleged Debtors sold its stock to another entity while the appeal on the dismissal orders was pending. Despite at least one opportunity for disclosure, at the September status conference, this Court was not informed of the sale until the hearing on October 5, 2012. For these reasons, this Court finds that the "special circumstances" exception should apply in the instant case.

### III. Conclusion

In conclusion, this Court finds that it is proper to consider state court judgments rendered subsequent to the filing of Involuntary Petitions when determining whether a bona fide dispute exists as to the amount of the debts claimed by the Petitioning Creditors. This Court concludes that the New York state court judgments have already answered the issues necessary to determining whether a bona fide dispute exists in this case. Because the New York state courts determined that the provisions in the guarantees constituted savings clauses, rather than

---

[16] During an evidentiary hearing concerning VPM's *Petition for Recognition of Foreign Proceeding*, VPM's primary witness claimed that the transfers were made solely for tax considerations. *See In re Vitro Packaging de Mexico S.A. de C.V.*, No. 11-34224-HDH-15 (Bankr. N.D. Tex. November 22, 2011) (order on chapter 15 petition for recognition of foreign proceeding).

limitations on liability, this Court finds that there is no bona fide dispute as to amount.

Further, this Court finds that the language of the savings clauses merely protects the noteholders from attempts to avoid the guaranties in the event those guaranties are challenged as constructively fraudulent transfers, and the Alleged Debtors did not show that the guarantees constituted fraudulent transfers that would invoke the savings clause in this case.

Finally, the transfers and concealment by the Alleged Debtors would trigger the application of the "special circumstances" exception to the requirements of section 303(b). Therefore, this Court concludes that orders for relief should be entered against the Alleged Debtors.

###End of Memorandum Opinion###